WILLIAM BROSSMAN, Appellee, *vs.* THE DRAKE STANDARD
MACHINE WORKS, Appellant.

*Opinion filed February 20, 1908.*

1. NEGLIGENCE—*the duty of shipper to truck driver assisting in loading machine.* A shipper owes to a truck driver engaged in helping employees of the shipper to load a heavy machine upon his truck, the duty of exercising ordinary care to furnish reasonably safe appliances with which to do the work, but he is not an insurer of their safety.

2. SAME—*person is not required to subject tackle to laboratory tests to discover defects.* One who uses a crane in his business is

not required to subject a hook, which is part of the tackle, to such tests as heating it red-hot and plunging it in water, filing it and treating it with acid, or examining it with a microscope, before he can avoid liability for injuries caused by a latent defect in the hook, and it is error to permit proof that if such tests had been made the defect might have been discovered.

3. Same—*what evidence is not admissible in action for injury received from breaking of tackle.* In an action for damages for injuries sustained by the plaintiff from the breaking of a hook attached to a chain which was part of a crane used in lifting heavy articles, evidence that the hook was made of Bessemer steel and that if it had been made of wrought iron it would have been a better hook is not admissible.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. Clifford, Judge, presiding.

O. W. Dynes, for appellant.

Irving W. Baker, and Simon Kruse, for appellee.

Mr. Chief Justice Hand delivered the opinion of the court:

This was an action on the case commenced by William Brossman, the appellee, in the circuit court of Cook county, against the Drake Standard Machine Works, the appellant, to recover damages for a personal injury alleged to have been sustained by the appellee through the negligence of the appellant. The appellee was a truck driver, and while a concrete-mixer, which weighed something like four thousand pounds, was being loaded at the factory of the appellant upon the truck which was being driven by appellee, by means of a crane, a hook upon the end of one of the chains which supported the mixer, and which was attached to the crane, broke, and the mixer fell and caught and crushed the thumb and two of the fingers of the appellee between the mixer and the blocking upon the truck. The jury returned

a verdict in favor of the appellee for $2000, upon which the court, after overruling a motion for a new trial, rendered judgment, which judgment has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

The negligence charged in the declaration was, that the hook which broke and allowed the concrete-mixer to fall upon appellee's thumb and fingers was defective, and that the appellant knew or should have known of such defect and that the appellee did not have notice thereof, and the general issue was filed.

The evidence showed that the injury was caused by the breaking of said hook, and the only controverted question of fact in the case was whether the defect in the hook was obvious or whether it was latent, and such a defect as a practical inspection of the hook would have disclosed. There is evidence in the record which fairly tends to prove that the hook was worn and cracked at the point where it gave way and that such worn and cracked condition was obvious to the eye, and we think, in view of such evidence, the court did not err in overruling appellant's motion for a directed verdict.

A number of witnesses were called by appellant who testified that the hook was sound to all appearances, and that the defect in the hook which caused it to break was a "gall" or defect in the hook at the point where the hook broke, and that the defect was in the inside of the hook and could not be discovered from an inspection of the hook by the eye. They also testified that the hook had repeatedly stood a heavier strain without breaking than it was put to at the time of the accident. For the purpose of showing that the defect in the hook which caused it to break could have been discovered by appellant had it properly inspected the hook, the appellee called a number of witnesses as experts, and over the objection of appellant he was permitted to prove by said witnesses that if the appellant had properly

inspected said hook the defect in said hook would have been disclosed, and that a proper method of inspecting said hook would have been to have heated the hook and applied water to it, or to have filed the hook and applied acid to it, or to have examined it with a microscope. It is doubtless true that all or any of said tests might have disclosed the defect in said hook; but was the appellant bound to make an inspection of that kind of the hook before it could relieve itself from liability in consequence of the defective condition of said hook? We think not. The appellant was not an insurer of the safety of said hook, and was only bound to use reasonable care to discover defects therein. The appellant was not bound to subject the hook to unusual tests or to examine the interior parts of the hook to see that it was free from defects. (*Westinghouse Electric and Manf. Co.* v. *Heimlich,* 127 Fed. Rep. 92.) Had the appellant sought to discover defects in said hook by heating or with acid, it might have examined every part of the hook excepting the identical spot beneath which the defect was located and found the hook apparently sound and from such inspection been led to believe that the hook was perfect, although there was a defective spot in the hook which eventually would cause it to break when submitted to a heavy strain. The chain and hook were used for lifting purposes, and while the tests referred to by the expert witnesses called by appellee might be proper tests when applied to a hook being examined in a laboratory, they are not practical tests which can be applied to a hook used in a factory for the purposes for which the hook in question was used. The appellant only owed the appellee the duty to exercise ordinary care, while the appellee was engaged in assisting its employees in loading said concrete-mixer, to furnish reasonably safe machinery with which to perform said work, and it was not bound to subject the hook in question to any unusual and impracticable tests to ascertain whether it was defective. *City of Elgin* v. *Nofs,* 200 Ill. 252.

The appellee was also permitted to prove that the hook was made of Bessemer steel, and that had it been made of wrought iron it would have been a better hook. This was error.

The evidence in this case was very close, and we think the errors of the court in permitting proof that if the appellant had caused said hook to be heated and placed in water, or to be treated with acid after being filed, or examined under a microscope, the defects therein might have been discovered, and that the hook was made of Bessemer steel and that a hook made of wrought iron would have been a better hook, were so far prejudicial to the appellant that the case should be reversed.

The judgments of the circuit and Appellate Courts will be reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*